JOE GOUY SHONG, administrator, *vs.* JOE CHEW SHEE & another.

Suffolk.    December 1, 1925. — January 7, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Physician.    Good Will.    Executor and Administrator,* Accounts.    *Contract,* Validity.

*Whether,* after the death of a physician, there can be a good will attached to his practice which passes as an asset to his estate, or *whether* it is something purely personal, depending upon the confidence reposed in his skill and ability, and after his death having no real or intrinsic value, was not decided.

There can be no good will connected with an illegal business.

Where an intestate for some time before his death was engaged in the practice of medicine in violation of G. L. c. 112, § 6, and afterwards the administrator of his estate continues to carry on the same business illegally, he cannot be compelled to account as administrator for money obtained as a result of such unlawful transactions.

The absence of participation by the next of kin in the illegal business carried on after the intestate's death as above described gave them no right to compel the administrator to account for the money received in its promotion.

In connection with the transaction of the illegal business above described, the administrator sold some tea and rice. The judge found that those sales were negligible and were a cover for the real business of practising medicine. *Held,* that the administrator could not be required to account for such sales.

PETITION, filed in the Probate Court for the county of Suffolk on April 8, 1924, by the administrator of the estate of Joe Pang Suey for the allowance of his third account.

The petition was heard by *Dolan*, J., a stenographer having been appointed under G. L. c. 215, § 18, to take the evidence. Material findings and rulings by the judge are described in the opinion. By order of the judge, a decree was entered from which Joe Chew Shee, widow of the intestate, and Joe Suey Chong, his son, appealed. At the request of the appellants, the judge reported his findings of material facts.

*H. W. Ogden*, for the respondents.

*A. E. Lunt*, for the petitioner.

CROSBY, J. This case was heard by a judge of the Probate Court for the county of Suffolk on the allowance of the third account of the administrator of the estate of Joe Pang Suey. The account as presented with certain amendments was allowed, and a decree was entered accordingly. The court ruled that the accountant was not chargeable, as administrator, with amounts received by him for his services, as a so called Chinese doctor, rendered to persons after the death of the intestate. To this ruling Joe Chew Shee and Joe Suey Chong, respectively, the widow and son of the intestate, excepted, and they appealed from a decree adopting that ruling. The appellants offered to prove that the business of the intestate (which after his death was carried on by the administrator on his own account) was very lucrative, netting him not less than $50,000. This offer of proof was excluded subject to the appellants' exception. After entry of the decree allowing the account as amended, at the request of the appellants the judge reported the material facts found by him, and also the evidence, which is somewhat voluminous.

The intestate died on April 21, 1917. For several years before that time, he was engaged in business as a Chinese doctor, practising medicine at 83 Dartmouth Street, Boston, without any certificate or authority required by G. L. c. 112, § 2. He left as his only heirs at law a widow and a son, the appellants, who resided in China and had not been in this country before his death. The administrator was in his

employ, and for a considerable time after the intestate's death carried on the business. Two white women, May. Matheson and Emma F. Goodwin, were also in his employ; and during his last illness he was attended by one Joe Fie, a servant. Upon his death, a public administrator of his estate was appointed and acted as such until August 10, 1917, when the present administrator was appointed. The intestate left approximately $200,000 in cash in the house where he lived, besides other personalty. The administrator continued to live in this house, and purchased of Joe Fie for $2,200 the business, which included the fixtures, furniture, herbs and alleged good will. Fie had no authority to make the sale, and retained the money so received to his own use. This purchase was made by the accountant before he was appointed administrator. He charged himself with only $450, the value of the herbs; the balance of $1,750, he was ordered by the court to account for in his third account.

The deceased carried on his business under the name of the Pang Suey Herb Company. Ninety per cent of his patients were white persons. He had, with their assistance, attempted to obtain legislation to legalize his business, but without success. He sold small amounts of tea and rice, but his real business was the practice of medicine and these sales were a mere cover. The sale of herbs was in connection with the practice of medicine, herbs comprising the medicines dispensed by him. In November, 1916, on account of difficulties with the authorities, he arranged with Dr. Robert Swift, a registered physician, to come to his place of business on two days each week to examine new patients, who came on those days. The doctor would make a diagnosis of these patients and turn them over to the intestate or to his assistant (the administrator), who would then prescribe for them according to Chinese methods. This service, rendered by Dr. Swift before the enactment of the statute prohibiting such service (St. 1917, c. 55, § 1), was for the purpose of protecting the intestate and his assistant from criminal prosecution. The doctor continued so to act up to the death of the intestate; and thereafter until June 4, 1917, he assisted the administrator in the same manner. After the death of

the deceased, Emma F. Goodwin continued in the employ of the administrator and remained until December, 1917. A few weeks after the intestate died she sent a letter to some of his former patients as follows: "Dr. Gouy Shong, for many years associated with Dr. Pang Suey, recently deceased, will continue at 83 Dartmouth Street, Boston, the business as heretofore. Mail should be addressed to Dr. Gouy Shong at above address." This letter was sent with the approval of the administrator. May Matheson, above referred to, who was employed by the deceased for six years before his death, remained with the administrator as an assistant until her death on May 15, 1923. Patients continued to come in the same numbers until 1922, when the business became less profitable. Many of those treated by the administrator were former patients of the deceased. The sales of tea and rice were negligible, and, as in the case of the deceased, were a cover for the real business. Neither the intestate nor the administrator was registered as a physician, as required by G. L. c. 112, § 2.

Upon these findings, the judge ruled that the business engaged in by the deceased, and after his death by the administrator, was unlawful and illegal; and that the accountant was not chargeable as administrator with any fees or emoluments received by him for his services as a so called Chinese doctor, after the death of the intestate. An examination of the evidence shows that the findings and rulings were well warranted. The evidence makes it plain that both the intestate and his successor in business, the administrator, were engaged in the practice of medicine without any lawful authority and in violation of G. L. c. 112, § 6, and earlier statutes to the same effect. The employment of Dr. Swift during a portion of the time to examine and make a diagnosis of patients did not make the acts of the intestate or of the administrator lawful. The acts of each in prescribing and dealing out medicine were in violation of law. To prescribe and furnish medicines is to practise medicine within the meaning of the statute. *Commonwealth* v. *St. Pierre*, 175 Mass. 48. *Commonwealth* v. *Porn*, 196 Mass. 326. *Commonwealth* v. *Jewelle*, 199 Mass. 558. *Commonwealth*

v. *Zimmerman,* 221 Mass. 184. *Commonwealth* v. *Houtenbrink,* 235 Mass. 320. *Commonwealth* v. *Dragon,* 239 Mass. 549.

Whether there can be a good will attached to the practice of a physician after his death which passes as an asset to his estate, or whether it is something purely personal, depending upon the confidence reposed in his skill and ability, and after his death has no real or intrinsic value, we are not called upon to decide. The intestate was not a registered physician in this Commonwealth and never was authorized, so far as appears, to practise medicine in Massachusetts. Although the administrator succeeded to and carried on the business, it was unlawful as to both. It would be contrary to sound principles of the law to hold that there could be any good will connected with an illegal business. It would be equally subversive of well settled equitable precedents to compel an accounting for money so received, or to account for money obtained as the result of unlawful transactions. *Snell* v. *Dwight,* 120 Mass. 9. *Blasdel* v. *Fowle,* 120 Mass. 447. *Duane* v. *Merchants Legal Stamp Co.* 227 Mass. 466.

The heirs of the estate of the intestate can have no greater right to an accounting for profits resulting from such a business than the intestate would have had in his lifetime if his unlawful business had been diverted by another. The contention of the appellants that they are entitled to secure the fruits of this business cannot be sustained. A court will not lend its aid to the enforcement of an illegal contract, nor will it compel an administrator who has succeeded to an unlawful business to account for profits so received by him, although such business was purchased by him from the estate and had been previously established. A court of chancery will not lend its aid to compel an accounting for money received in the conduct of a business in violation of a statute enacted to protect the safety, health and welfare of the public. The fact that the appellants did not participate in the illegal business is not material. By reason of the failure of the administrator to account for profits received by him, the estate loses nothing which it is entitled to receive. Its assets cannot be enhanced by gains obtained by the

administrator while engaged in a criminal enterprise. The claim of the appellants is necessarily based upon the unlawful acts of the administrator, which were entirely apart from his official duties. Although the facts in the case of *Duane* v. *Merchants Legal Stamp Co., supra,* are different in many respects from those in the present case, the principles there recognized and affirmed are pertinent to the case at bar. See also *Eastern Expanded Metal Co.* v. *Webb Granite & Construction Co.* 195 Mass. 356.

The appellants contend that at least the administrator should account for the profits received from the sale of tea and rice. The court found that those sales were negligble, and were a cover for the real business of practising medicine. It does not appear what the profits, if any, realized from such sales amounted to. There was some evidence tending to show the amount of tea and rice sold, but the judge was not required to believe it. From the finding that such sales were negligible and a cover for the illegal business it may fairly be inferred that there were no real profits from such sales.

The decree allowing the administrator's third account as amended is affirmed.

*So ordered.*