THOMAS W. BICKNELL & another *vs.* NEW YORK AND NEW ENGLAND RAILROAD COMPANY.

Suffolk.    March 21, 1894. — May 18, 1894.

Present: HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Trespass — Abandonment of Railroad Location — Evidence.*

At the trial of an action of trespass involving the determination of the ownership of a strip of land, it appeared that the strip in question lay between two lines, one of which was two rods and the other two and a half rods westerly of the central line of the defendant's railroad, which there ran nearly north and south ; that the original location of the railroad at that point was five rods wide ; that when the location was filed the owner of land included in the location lying next easterly of the strip in question, the boundary line of which separating it from this strip was two rods westerly from the centre line of the location, was also the owner of four other lots southerly of and adjoining the lot lying next easterly of the strip in question, through which the location ran, leaving him the owner of the portions of those lots lying on each side thereof ; that after the location was filed, he filed a petition before the county commissioners asking for an assessment of the damages for the taking of the land, in which he alleged that the land taken "for the building of said railroad and for railroad purposes" along the edge of the first of these lots, and through the other four lots, was a strip "four rods in width or thereabouts"; that upon this petition the county commissioners, as appeared by the record of their proceedings, which was admitted in evidence, awarded damages, describing the land taken as it was described in the petition ; that by an agreement between him and the railroad company, which, together with a deed therein referred to, were introduced in evidence, both bearing the same date as the decree of the county commissioners, it appeared that the defendant was to pay to such owner, within three years from that date, the damages awarded by the county commissioners, and was to receive deeds for all of these lots covering the strip four rods wide through them all, these deeds being delivered in escrow with a provision that any deed might be taken by the company on payment of that portion of the money which was mentioned as the price of the land conveyed by it, and that, if the whole amount was not paid within three years, the deeds should be returned to the grantor, and the railroad company should have no right to the land except that derived from its location, and should be liable for the

payment of the commissioners' award; that the sum mentioned in the agreement was not paid within the time limited therein, and the deed of the lot next easterly of the land in question which had been delivered in escrow was never delivered to the railroad company, although under the agreement it was to be inferred that the land was afterwards paid for in accordance with the award of the county commissioners; and that this deed described by metes and bounds the strip four rods wide, and to the description were added the words "the same being the track or road-bed of said" railroad company "four rods in width." *Held,* that the facts disclosed by the agreement and deed tended to show that of the estate of such owner the railroad company took and paid for a strip of land only four rods wide next easterly of the land in question and extending southward through the next four lots, and that the remainder of the land included in the original location along that line was abandoned, and that these papers, taken in connection with the record of the county commissioners, were competent as tending to show that the railroad company also abandoned the strip of land in question.

TORT, for trespass in the erection of a fence on a strip of land alleged to belong to the plaintiffs, situated near the Harvard Street station on the defendant's railroad, in the city of Boston. Writ dated April 18, 1891.

At the trial in the Superior Court, before *Aldrich,* J., the jury returned a verdict for the plaintiffs, and the defendant alleged exceptions, the nature of which appear in the opinion.

*F. A. Farnham,* for the defendant.

*W. S. Pinkham,* for the plaintiffs.

KNOWLTON, J. This case involves the question whether a strip of land, half a rod wide and about three hundred feet long, belongs to the plaintiffs or to the defendant. This strip lies between two lines, one of which is two rods and the other two and a half rods westerly of the centre line of the defendant's railroad. It was proved that the original location of the railroad at this point, filed by the Boston and New York Central Railroad, the defendant's predecessor, was five rods wide, but it was contended by the plaintiffs that the company abandoned one rod in width of the location, one half a rod on each side of the original location, thus leaving the location which was actually taken and paid for only four rods wide. The issue tried was whether there was such an abandonment, and the only exception taken was to the admission of certain papers in evidence on that issue.

The railroad at this point runs nearly north and south, and it appeared that when the location was filed one William L.

Carlton was the owner of land included in the location lying next easterly of this strip, the boundary line of which, separating it from this strip, was two rods westerly from the centre line of the location. He was also the owner of four other lots southerly of this and adjoining it, through which the location ran, leaving him the owner of the portions of these lots lying on each side of the location. Nearly two years after the location was filed, William L. Carlton having deceased, his administrator filed a petition before the county commissioners asking for an assessment of the damages for the taking of this land, in which he alleged that the land taken " for the building of said railroad and for railroad purposes " along the edge of the first of these lots and through the other four lots was a strip " four rods in width or thereabouts." Upon this petition, on March 9, 1857, the county comissioners awarded damages in the sum of $15,171.77, describing the land taken as it was described in the petition. The record of these proceedings was admitted without objection. The court then admitted, subject to the defendant's exception, an agreement and a deed referred to in it bearing the same date as the decree of the county commissioners, by which it appeared that the railroad company was to pay to the administrator the above mentioned sum with interest within three years from that date, and was to receive five deeds signed by the heirs of William L. Carlton, which together covered the strip four rods wide through all of these lots, one deed being made for each lot, and these deeds being delivered in escrow with a provision that any deed might be taken by the company on payment of that portion of the money which was mentioned as the price of the land conveyed by it. It was further stipulated that, if the whole amount was not paid with interest within three years, the deeds should be returned to the grantors, and the railroad company should have no right to the land except that derived from its location, and should be liable for payment of the commissioners' award. The records of the commissioners show that the company was required to give security for the payment of the award. The sum mentioned in the agreement was not paid within the time limited therein, and the deed of the lot next easterly of the land in question, which had been delivered in escrow, was never delivered to the railroad company.

This deed described by metes and bounds the strip four rods wide, and to the specific description were added the words " the same being the track or road-bed of said Boston and New York Central Railroad, four rods in width," etc.   Under the agreement it is to be inferred that this land was afterwards paid for in accordance with the award of the county commissioners.   The facts disclosed by these papers tend strongly to show that of the estate of William L. Carlton the railroad company took and paid for a strip of land only four rods wide next easterly of the land in question and extending southward through the next four lots, and that the remainder of the land included in the original location along that line was abandoned.   In *Westcott* v. *New York & New England Railroad,* 152 Mass. 465, these papers were held competent evidence to prove that fact.   But if the company abandoned half a rod in width on each side of the four-rod strip through Carlton's lots next southerly of this land, and on the easterly side of the location through Carlton's lot next easterly of this, it would seem probable that the half-rod on the westerly side along this lot was also abandoned, and that the company's land was not left with a jog extending out half a rod on one side for a short distance along land of a different owner.   The language above quoted from the deed which was referred to in the agreement implies that the road was only four rods wide at that point. We are of opinion that the agreement and deed, taken in connection with the record of the county commissioners, were competent for the consideration of the jury with the other facts, as tending to show that the railroad company abandoned this strip of land, as well as a similar strip to the southward, and a corresponding strip on the opposite side of the railroad.

*Exceptions overruled.*